**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AVENGER FLIGHT GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10183 (___)<br><br>(Joint Administration Requested) |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING AGREEMENT; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "AFG") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this motion (the "Motion") for the entry of an interim order on an expedited basis, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), the entry of a final order, substantially in the form attached hereto as **Exhibit B** (the "Final Order"), pursuant to sections 105, 363(b)(1), 503(b)(1), 1107(a), and 1112(b)(4)(C) of title 11 of the United State Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies (as defined below);

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

(ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations (as defined below), and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief. In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Lawrence Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference.[2] In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, within the meaning of Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

3. The statutory bases for the relief requested herein are sections 105, 363(b)(1), 364(c), 503(b)(1), 1107(a), and 1112(b)(4)(C) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004 and Local Rule 9013-1.

**Background**

4. On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases, and no committees have been appointed or designated.

5. Avenger Flight Group, LLC ("AFG LLC") and its affiliates (collectively, "Avenger" or the "Company") is a global leader in the commercial aviation simulation and training business. Avenger provides a full suite of advanced flight simulator training solutions to their customers, which include blue-chip passenger airlines, regional airlines, charter operators, and training operators. As of the Petition Date, the Company owns, operates or services 50 full-flight simulators and 15 flight training devices across 11 training centers in 4 countries.

6. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

**The Insurance Policies and Related Payment Obligations**

7. In the ordinary course of business, the Debtors are the beneficiaries of certain insurance policies (collectively, the "Insurance Policies," and each individually an "Insurance Policy") that provide coverage for, among other things, property, business automobile, general commercial liability, directors' and officers' liability, and workers' compensation liability. The Debtors obtain the Insurance Policies through various third-party insurance carriers

(collectively, the "Insurance Carriers").  A list of the Insurance Policies is attached hereto as **Exhibit C**.³  As part of maintaining their Insurance Policies in the ordinary course of business, the Debtors pay premiums and other obligations related thereto, including any broker or advisor fees, assessments, or other fees (collectively, the "Insurance Obligations").  The Debtors believe that they are current on payment of all prepetition Insurance Obligations.

8. The Insurance Policies are essential to the ongoing operation of the Debtors' business. The majority of the Insurance Policies are renewed on an annual basis. The annual premiums for the Insurance Policies total approximately $1.4 million in the aggregate (collectively, the "Insurance Policy Premiums"), of which approximately $250,000 is financed through a third-party premium financing company, AFCO Direct (the "Premium Financing Company").  The Debtors estimate that, as of the Petition Date, approximately $150,000 remains outstanding on account of the Insurance Policy financed through the Premium Financing Company. In addition, four (4) policies are paid directly to the carrier or broker on an installment basis, of which approximately $100,000 in installment payments has not yet been billed. While the Debtors are current on their insurance obligations, out of an abundance of caution, the Debtors seek authority to pay any prepetition obligations owing on account of the Insurance Policies in the ordinary course of business as they become due to ensure uninterrupted coverage thereunder.

9. The Debtors use Willis Towers Watson plc, CAC Group, and Marsh FINPRO (the "Brokers") as their insurance brokers to assist with the procurement and negotiation of certain Insurance Policies, and the Brokers assess certain fees or commissions ("Brokers' Fees") that are

---

³ The Debtors believe that **Exhibit C** is a complete list of the Insurance Policies.  However, to the extent that any Insurance Policy has been omitted, or the Debtors obtain new Insurance Policies, the Debtors request that the relief sought herein applies to such Insurance Policies as well.

included and paid as part of the applicable Insurance Policies.  The Debtors are current on payment of outstanding prepetition Brokers' Fees.

10. Continuation of the Insurance Policies, and entry into new insurance policies and related financing agreements, is essential to the preservation of the value of the Debtors' businesses and operations.  Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "U.S. Trustee") requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, the Debtors request authorization, but not direction, to continue prepetition practices related to the Insurance Policies, satisfy prepetition obligations related thereto, and enter into new insurance policies and related financing arrangements, as applicable, in the ordinary course of business on a postpetition basis, subject to applicable law.

## Insurance Premium Financing Agreement

11. In the ordinary course, the Debtors finance the premium payments for one Insurance Policy (the "Financed Policy") pursuant to a premium financing agreement (the "Premium Financing Agreement") with the Premium Financing Company. A copy of the Insurance Premium Financing Agreement is attached hereto as **Exhibit D**.  The obligations under the Insurance Premium Financing Agreement (the "Premium Financing Obligations") are secured by any and all unearned or return premiums and dividends that may become due under the policies purchased in connection with the Insurance Premium Financing Agreement.  Among the potential remedies available to AFCO for non-payment is the ability to cancel the Insurance Policies and seek a refund of the Insurance Premiums it financed.  As of the Petition Date, the Debtors are current on their Premium Financing Obligations.  Pursuant to the Premium Financing Agreement,

the Debtors are required to pay monthly installments of approximately $24,000 on account of the Financed Policies. The aggregate annual premium for the Financed Policies is approximately $250,000 including applicable taxes and surcharges, with an interest rate of approximately 9.5% percent.

12. As of the Petition Date, approximately $150,000 remains outstanding under the Premium Financing Agreement, with no amounts in arrears. The Debtors expect that this $150,000 will come due postpetition in the ordinary course. The Debtors seek authority, but not direction, to pay related prepetition obligations under the Premium Financing Agreement and any related postpetition obligations due in the ordinary course and enter into new agreements as needed to finance the premiums under the affected Insurance Policies and to pay any associated Premium Financing Obligations.

**Relief Requested**

13. The Debtors seek entry of the proposed Interim Order in substantially the form attached hereto as <u>Exhibit A</u>, and entry of the proposed Final Order in substantially in the form attached hereto as <u>Exhibit B</u> (together, the "<u>Proposed Orders</u>"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately thirty-five (35) calendar days of the commencement of the Chapter 11 Cases to consider approval of this Motion on a final basis.

**Basis for Relief**

**A.     Continuation of the Insurance Policies is Required
        by the Bankruptcy Code and U.S. Trustee Guidelines**

14.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 3 (the "U.S. Trustee Guidelines"). Accordingly, the Debtors believe that it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all Insurance Obligations related to the Insurance Policies and related financing agreements and that they have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

**B.     Satisfying the Insurance Obligations under the Insurance Policies and
        Related Financing Agreements in the Ordinary Course of Business Is Warranted**

15.     Under section 363(b) of the Bankruptcy Code, a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363(c) of the Bankruptcy Code authorizes a debtor-in-possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Maintenance of the Debtors' Insurance Policies and insurance financing programs, including payment of the prepetition and postpetition Insurance Obligations, renewing the Insurance Policies, and entering into new insurance arrangements, are within the ordinary course of the Debtors' business.

16. Further, even if the continuation or renewal of the Insurance Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

17. Moreover, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy § 105.01 (15th ed., rev. 2008). Section 105(a) of the Bankruptcy Code essentially codifies the bankruptcy courts' equitable powers.

18. The Insurance Policies provide the Debtors with essential insurance coverage. Any lapse in the coverage to be provided under the Insurance Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages, and penalties for failing to maintain proper insurance. Therefore, in light of the importance of the Insurance Policies, the Debtors should be permitted to exercise their reasonable business judgment to continue and renew the Insurance Policies as they expire.

19. Courts in this district have routinely granted relief similar to that requested herein. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Dec. 31, 2025); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 22, 2025); *In re Am. Tire Distribs.*, Inc., No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024); *In re GigaMonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023); *In re Medly Health Inc.*, No. 22-11257 (Bankr. D. Del. Jan. 6, 2023); *In re First Guar. Mortg. Corp.*, No. 22-10584 (CTG) (Bankr. D. Del. July 26, 2022); *In re CarbonLite Holdings LLC*, No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Advantage Holdco, Inc.*, No. 20-11259 (JTD) (Bankr. D. Del. June 30, 2020); *In re Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. June 25, 2020); *In re Exide Holdings, Inc.*, No. 20-11157 (CSS) (Bankr. D. Del. June 18, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Melinta Therapeutics, Inc.*, No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re J & M Sales Inc.*, No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018); *In re Samuels Jewelers, Inc.*, No. 18-11818 (KJC) (Bankr. D. Del. Aug. 8, 2018).

C. **The Debtors Should Be Authorized to Honor their Insurance Obligations Under and Renew or Otherwise Obtain Postpetition Premium Financing**

20. Insurance premium financing traditionally involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the insurance policy. "This advance is then repaid by the insured to the finance company in amortized monthly installments which include an additional amount to cover financing charges. The financing company is secured in making this advance payment by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made." *Baker & Co. v. Preferred Mut. Ins. Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978). The return premium due to the finance company upon cancellation is known as an unearned premium.

21. Security interests created by premium financing agreements have been recognized as creating secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements and, by extension, entry into purchase finance agreements constitutes the incurrence of secured credit. *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994–95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164–66 (Bankr. D.D.C. 1981). If the Debtors fail to honor the Insurance Premium Financing Agreement, the Premium Financing Company could seek to cancel the financed policies for non-payment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtors' failure to honor their obligations under the Insurance Premium Financing Agreement. Because the Debtors are required to maintain insurance coverage during these Chapter 11 Cases, the cancellation of these policies would be particularly disastrous. Accordingly, the Debtors submit that payment of the prepetition amounts outstanding and the monthly installment payments under the Insurance Premium Financing Agreement is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.

22. Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (D. Colo. 1985) (authorizing an interim financing agreement where the debtors' business judgment indicated that the financing was necessary and reasonable for the benefit of the debtors' estates). Given the prevailing practices in the premium financing business, the Debtors believe that it is highly

unlikely they would be able to obtain financing for their premiums under the Insurance Policies absent a secured financing agreement. Accordingly, the Debtors submit that entry into any replacement financing agreement and granting security interests to secure such obligations is appropriate under section 364(c) of the Bankruptcy Code.

23. Courts in this district recognize the importance of a debtor renewing and honoring obligations under premium financing agreements and have granted relief similar to the relief requested herein. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Nov. 22, 2025); *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Sept. 8, 2025) (authorizing the debtors to honor obligations under and renew premium financing agreements); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (same); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 13, 2024) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bank. D. Del. Aug. 29, 2024) (same).

**D.   Cause Exists to Authorize the Debtors'
       Financial Institutions to Honor Checks and Electronic Funds Transfers**

24. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and access to debtor-in-possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests with respect to the relief requested in this Motion.

**Satisfaction of Bankruptcy Rule 6003**

25. The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion. Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." Fed. R. Bankr. P. 6003. As described above, continuing insurance coverage during these Chapter 11 Cases is necessary to the continuation of the Debtors' business operations. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' business operations at this critical juncture and add needless costs to the administration of these cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Waiver of Bankruptcy Rule 6004(h)**

26. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, cause exists to justify a finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied, and to support the grant of a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that such notice requirements and such stay apply.

**Reservation of Rights**

27. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**Notice**

28. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: Jon Lipshie, Esq. (jon.lipshie@usdoj.gov); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Debtors' secured creditors; (d) the United States Attorney's Office for the District of Delaware; (e) the state attorneys general for all states in which the Debtors conduct business; (f) the Securities Exchange Commission; and (g) any party that requests service pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

**No Prior Request**

29. No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Conclusion**

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders, substantially in the forms attached hereto as Exhibit A (on an interim basis) and Exhibit B (on a final basis): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief as is just and proper.

Dated: February 11, 2026      **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*
Richard M. Pachulski, Esq. (*pro hac vice* forthcoming)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:   (302) 652-4100
Facsimile:    (302) 652 4400
Email:         rpachulski@pszjlaw.com
                  mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (*pro hac vice* forthcoming)
Cia H. Mackle, Esq. (*pro hac vice* forthcoming)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:   (212) 561-7700
Facsimile:    (212) 561-7777
Email:         gdemo@pszjlaw.com
                  cmackle@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*