## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (   ) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY
PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION,
AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (the "Debtors" or "AFG") file this motion (the "Motion") for the entry of an interim order on an expedited basis, substantially in the form attached hereto as **Exhibit A** (the "Proposed Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), the entry of a final order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Final Order"): (i) (a) authorizing, but not directing, the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto, in an aggregate amount not to exceed $549,000 pursuant to the Interim Order and $551,000 pursuant to the Final Order; and (b) granting related

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.

relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately thirty-five (35) calendar days of the commencement of the Chapter 11 Cases to consider approval of this Motion on a final basis.  In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Lawrence Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference.[2]  In further support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

---

[2]    A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

**BACKGROUND**

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no committees have been appointed or designated.

5.      Avenger Flight Group, LLC ("AFG LLC") and its affiliates (collectively, "Avenger" or the "Company") is a global leader in the commercial aviation simulation and training business.  Avenger provides a full suite of advanced flight simulator training solutions to their customers, which include blue-chip passenger airlines, regional airlines, charter operators, and training operators.  As of the Petition Date, the Company owns, operates or services 50 full-flight simulators and 15 flight training devices across 11 training centers in 4 countries.

6.      A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

**THE DEBTORS' WORKFORCE**

7.      As of the Petition Date, the Debtors employ approximately 106 employees, 95 of whom are salaried and 11 of whom are hourly (the "Employees").  The Employees perform a variety of functions critical to the preservation of value and the administration of the Debtors' estates.  In many instances, the Employees include personnel who have specialized and unique technical and scientific expertise, are intimately familiar with the Debtors' businesses, processes, and systems, and who cannot be easily replaced.  Without the continued, uninterrupted services of

the Employees, the Debtors simply could not run their business and preserve value for the benefit of all stakeholders.

8.      Many of the Employees rely on their compensation and benefits to pay their daily living expenses.  Thus, the Employees will be exposed to significant financial constraints if the Debtors are not permitted to continue paying the Employees' compensation and providing the Employees with health and other benefits.  Without the continued, uninterrupted services of their Employees, the Debtors' reorganization efforts will be threatened.  Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these Chapter 11 Cases.

9.      To minimize the personal hardship the Employees could suffer if prepetition Employee-related obligations are not paid when due or as expected and to maintain stability in the Debtors' workforce during the administration of the Debtors' Chapter 11 Cases, the Debtors, by this motion, seek authority, but not direction, to:  (a) pay and honor certain prepetition claims relating to, among other things, wages, salaries, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and taxes), reimbursable expenses, health insurance, retirement health and related benefits, workers' compensation benefits, life insurance, short-term and long-term disability coverage, and certain other benefits that the Debtors have historically provided in the ordinary course (collectively, the "Employee Compensation and Benefits"); and (b) pay all costs incident to the Employee Compensation and Benefits, collectively in an aggregate amount not to exceed $549,000 pursuant to the Interim Order and $551,000 pursuant to the Final Order.

10.      Subject to approval from the Court, the Debtors intend to continue their applicable prepetition Employee Compensation and Benefits in the ordinary course.  Out of an abundance of

caution, the Debtors further request authority to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course during these Chapter 11 Cases without the need for further Court approval, subject to the Bankruptcy Code and any other provisions of applicable law.

11.     By this Motion, the Debtors seek authority to make payments related to prepetition amounts owed on account of the Employee Compensation and Benefits, subject to the following limits:

| Employee Obligation | Interim Amount | Final Amount |
|---|---|---|
| Unpaid Compensation (Gross wages) | $315,000 | $315,000 |
| Withholding Obligations [1] | $105,000 | $105,000 |
| Payroll Processing Fees | $3,000 | $3,000 |
| Reimbursable Expenses | $50,000 | $50,000 |
| Independent Contractors | $10,000 | $10,000 |
| **Employee Compensation** | **$483,000** | **$483,000** |
| Health Benefit Plans [2] | $59,000 | $61,000 |
| Life and AD&D Insurance | N/A | N/A |
| 401(k) Plan [3] | $7,000 | $7,000 |
| Miscellaneous Benefits | N/A | N/A |
| **Employee Benefits Programs** | **$66,000** | **$68,000** |
| **Total** | **$549,000** | **$551,000** |

(1)   Represents Employer portion of Withholding Obligations.

(2)   Represents Employer funded portion of Health Benefits Plans.

(3)   Represents Employer matching portion of 401(k) Plan and associated fees to administer 401(k) Plan.

## EMPLOYEE COMPENSATION AND WITHHOLDING OBLIGATIONS

### A.     Unpaid Compensation

12.     In the ordinary course, the Debtors incur obligations to their Employees for, among other things, wages, salaries, overtime, and other obligations described herein (collectively, the "Employee Compensation"). The Debtors' payroll, paid every other Friday, is approximately

$400,000.  The Debtors' most recent payroll was February 6, 2026 and covered wages through January 31, 2026.  As of the Petition Date, the Debtors estimate that they owe approximately $315,000 on account of accrued and unpaid Employee Compensation earned by Employees prior to the Petition Date (the "Unpaid Compensation"), all of which will come due within the first twenty-one days of these Chapter 11 Cases.  As described above, if the Employees lose the Unpaid Compensation that they are owed, it could cause Employees to experience financial hardship.  In light of the substantial benefit the Employees will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship.  The Debtors do not seek to pay Unpaid Compensation to any Employee in excess of the $17,150 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code.

13.     Accordingly, by this motion the Debtors seek authority, but not direction, to pay their Employees any Unpaid Compensation in the ordinary course and consistent with past practice up to the amount of $315,000 and to continue the Employee Compensation in the ordinary course.

**B.     Withholding Obligations**

14.     During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients.

15.     In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of

gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time the Employees' payroll checks are disbursed.

16.     As of the Petition Date, the Debtors estimate that they will have approximately $105,000 in unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") outstanding, all of which will come due within the first twenty-one days of these Chapter 11 Cases. By this motion, the Debtors seek authority, but not direction, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course during the administration of these Chapter 11 Cases.

**C.     Payroll Processing**

17.     Payment of Employee payroll and certain Withholding Obligations for the Debtors' Employees are processed by Centrally HR.  As of the Petition Date, the Debtors estimate that they owe $3,000 on account of prepetition payroll services (the "Unpaid Payroll Processing Fees").  By this motion, the Debtors seek authority, but not direction, to pay the Unpaid Payroll Processing Fees consistent with past practice and to continue payroll processing in the ordinary course during the administration of these Chapter 11 Cases.

**D.     Reimbursable Expenses**

18.     Prior to the Petition Date and in the ordinary course, the Debtors reimbursed Employees or paid credit card invoices of certain Employees for approved expenses incurred on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses").  The Reimbursable Expenses are largely on account of costs related to airfare, lodging, ground transportation and business meals as well as for certain professional license certifications and for

the sales and marketing teams cell phone charges for reasonable business-related purposes. Employees who pay up front for Reimbursable Expenses apply for reimbursement by submitting an expense report to the Debtors.  Once they have determined that the charges are for legitimate reimbursable business expenses, the Debtors reimburse Employees for these expenses and utilize the services of SAP Concur to process Reimbursable Expenses.  The Debtors' inability to reimburse such expenses could impose hardship on such individuals, where such individuals otherwise incurred obligations for the Debtors' benefit.

19.     Historically, the Debtors pay Reimbursable Expenses of approximately $30,000 per month in the aggregate, which are reimbursed within approximately one to two weeks of approval of a submission by the appliable Employee.  As of the Petition Date, the Debtors estimate that they could owe approximately $50,000 in aggregate Reimbursable Expenses.

20.     Although the Debtors ask that reimbursement requests be submitted promptly, sometimes submission delays occur and Employees may submit reimbursement requests for prepetition expenses after the Petition Date.  Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed fully.  Accordingly, to avoid harming Employees who incurred the Reimbursable Expenses and who may become personally liable for such expenses, the Debtors request authority, but not direction, to pay the Reimbursable Expenses and to continue to pay the Reimbursable Expenses in the ordinary course.

E.     **Independent Contractors**

21.     The Debtors are invoiced for the services of approximately 13 Independent Contractors. Most of the Independent Contractors provided contracting flight training services to the Debtors' customers.  The Debtors have paid approximately $94,000 in the past 12 months to

the Independent Contractors (approx. $8,000 per month). Because the amount owing depends on hours actually spent, the precise amount of prepetition amounts owing to the Independent Contractors is unknown. Accordingly, the Debtors hereby seek authorization in their discretion to pay up to the amount of $10,000 on account of prepetition amounts that may be owing to Independent Contractors.

## EMPLOYEE BENEFITS PROGRAMS.

22.    The Debtors offer certain of their Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, medical, vision and dental plans, HSAs, life insurance, accidental death and dismemberment insurance, disability benefits, workers' compensation, retirement plans, incentive programs, paid time off, and other employee benefit plans (collectively, the "Employee Benefits Programs").

23.    As described above, failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship.  In light of the substantial benefit the Employees have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship.  Accordingly, by this motion, the Debtors seek authority, but not direction, to:  (a) pay any unpaid amounts due with respect to the Employee Benefits Programs; and (b) continue to provide Employee Benefits Programs in the ordinary course during the administration of these Chapter 11 Cases.  As of the Petition Date, the Debtors estimate that they owe approximately $68,000 on account of the Employee Benefits Programs, $66,000 of which will come due within the first twenty-one days of these Chapter 11 Cases.  The Employee Benefits Programs are described in greater detail below.

B.      **Health Benefit Plans**

24.      The Debtors offer eligible Employees and their families the opportunity to participate in a number of health benefit plans, including medical, vision, and dental plans (collectively, the "Health Benefit Plans"). The Debtors fund the Health Benefits Plans through a combination of regular deductions from Employee wages and Debtor contributions. Specifically, the Debtors provide the following effective on the first of the month following date of hire:

- Medical Plans:   The Debtors offer medical coverage to its Employees through Florida Blue or Sierra Health (for Nevada-based Employees).   The Debtors cover 100% of the cost of each Employee's selected plan, and 50% of the cost for any dependents' plan.   The monthly cost of the Debtors' medical plans is approximately $135,000 to Florida Blue and $12,000 to Sierra Health. The Debtors have paid Florida Blue and Sierra Health through January 31, 2026 and Sierra Health through February 28, 2026 on account of the Medical Plans.   The Debtors believe approximately $55,000 is owed on account of prepetition Medical Plan benefits as of the Petition Date.

- Health and Wellness Platform:   The Debtors provide health and wellness services to its employees through Joon at an average cost of approximately $4,000 per month in the aggregate, although if additional Employees elect to utilize the Health and Wellness Platform, the amount owed monthly could exceed $5,000.   Joon invoices the Debtors around the middle of each month for the prior month, and the Debtors then pay Joon on a monthly basis in arrears for the prior month. The Debtors have paid Joon through December 31, 2025 on account of the Health and Wellness Platform. The Debtors believe that they owe Joon $6,000 on account of the Health and Wellness Platform as of the Petition Date.

- Dental Plan:   The Debtors offer their Employees the option of participating in dental plans at their expense (the "Dental Plan") administered by Guardian.   The Debtors have paid Guardian through February 28, 2026 on account of the Dental Plan and believe no prepetition amount is outstanding as of the Petition Date.

- Vision Plan:   The Debtors offer their Employees the option of participating in a vision plan at their expense (the "Vision Plan") administered by Guardian.   The Debtors have paid Guardian through

February 28, 2026 on account of the Vision Plan and believe no prepetition amount is outstanding as of the Petition Date.

25.      As required by law, the Debtors also offer coverage under certain of the Health Benefit Plans to their former employees who have elected COBRA coverage.  In the case of the former employees terminated immediately prior to the Petition Date who have elected COBRA coverage, the Debtors paid up to 90 days' COBRA premiums on behalf of Employees impacted by WARN and up to 60 days' COBRA premiums on behalf of Employees not impacted by WARN. As part of the relief requested hereunder, the Debtors request authority to pay any unpaid prepetition premium payments relating to COBRA coverage as they come due in accordance with their prepetition policy and otherwise to continue to honor its prepetition policy concerning COBRA in the ordinary course of business.

**C.      Other Insurance, Disability Benefits, and Employee Financial Assistance Programs**

**1.      Life and AD&D Insurance Programs**

26.      The Debtors provide life and accidental death and dismemberment insurance (the "Basic Life and AD&D Insurance") to certain Employees in the United States through Guardian.  The Basic Life and AD&D Insurance provides full-time eligible Employees a death benefit of up to 100 percent of annual salary capped at $200,000.  The Debtors have paid Guardian through February 28, 2026 on account of the Basic Life and AD&D Insurance and believe no prepetition amount is outstanding as of the Petition Date.

27.      Employees may choose to purchase voluntary supplemental life insurance and accidental death and dismemberment insurance (the "Supplemental Life and AD&D Insurance") through Guardian.  The Debtors' Supplemental Life and AD&D Insurance is an optional benefit for Employees that wish to supplement the Basic Life and AD&D Insurance.  The Supplemental Life and AD&D Insurance is completely funded by participating Employees but administered by

the Debtors.  Because Employees pay for all costs of Supplemental Life and AD&D, the Debtors do not believe that they owe any amounts with respect to the Supplemental Life and AD&D Insurance as of the Petition Date.  Nevertheless, out of an abundance of caution, they seek authority to continue to offer this benefit in the ordinary course.

### 2. Disability Benefits

28.    The Debtors provide Employees with short-term and long-term disability benefits (the "Disability Benefits") through Guardian.  The monthly premiums for the Basic Life and AD&D Insurance and Disability Benefits is approximately $7,000. The Debtors have paid Guardian through February 28, 2026 on account of the Disability Benefits and believe no prepetition amount is outstanding as of the Petition Date.

### D. Workers' Compensation Program

29.    The Debtors maintain workers' compensation insurance for their Employees (or are otherwise self-insured) at the statutorily required level for each state in which the Debtors have Employees (collectively, the "Workers' Compensation Program").  In the Debtors maintain coverage for the Workers' Compensation Program through Sedgwick. The Workers' Compensation Program is provided on a guaranteed cost basis with no deductible nor self-insured retention.  The Debtors pay a fixed premium, regardless of the number or the amount of workers' compensation claims.[3]

30.    The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such

---

[3]    The Debtors request payment of premiums due for the Workers' Compensation Program through the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Their Obligations Under Insurance Policies Entered into Prepetition, (B) Continue to Pay Brokerage Fees, (C) Renew, Supplement, Modify or Purchase Insurance Coverage, and (II) Granting Related Relief* concurrently filed herewith.

liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.  There are 2 open claims under the Workers' Compensation Program.

31.     Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the restructuring process.  The Debtors seek authority, but not direction, to (a) continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis[4] and (b) modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

**E.     401(k) Plan**

32.     The Debtors offer eligible Employees in the U.S., the opportunity to participate in retirement plans, including a 401(k) plan Roth IRA (the "401(k) Plan").  The 401(k) Plan generally provides for pre-tax salary deductions of compensation up to limits set by the Internal Revenue Code.   The Debtors have the discretion to match an Employee's 401(k) Plan contributions, and match up each Employee's contribution up to four percent of compensation for the plan year (the "401(k) Contributions").  The 401(k) Plan is administered by Vanguard and allows for automatic pre-tax wage deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.

33.     Each pay period, Centrally HR deducts the Employees' 401(k) Plan contributions from the Employees' paychecks (the "401(k) Deductions") and holds such amounts in trust until

---

[4]    The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any changes to current policy and practices that become necessary, subject to applicable law.

they are forwarded to Vanguard.  The Debtors contribute approximately, on average, $13,000 per month on account of the 401(k) Contributions.  As of the Petition Date, the Debtors estimate that they owe $5,000 on account of the amount of 401(k) Deductions withheld from Employee paychecks matching 401(k) Contributions.

34.     Vanguard also acts as a 401(k) administrator and record keeper.  The Debtors pay Vanguard directly for its services, rather than deduct the costs out of the 401(k) assets.  As of the Petition Date, the Debtors estimate that they owe Vanguard approximately $2,000 for auditing costs.  The Debtors seek authority to honor their commitments to Vanguard  401(k) administrator, in the ordinary course on a postpetition basis.

35.     Many Employees' retirement savings solely consist of the 401(k) Plan.  Thus, the Debtors believe that continuing the 401(k) Plan is essential to maintaining Employee morale and protecting Employee expectations.  In addition, the Debtors believe that the 401(k) Deductions are generally held in trust by the Debtors and are not property of their estates.

36.     Accordingly, pursuant to the Interim Order and the Final Order, the Debtors seek the authority, but not direction, to (a) continue the 401(k) Plan in the ordinary course of business on a postpetition basis, (b) remit all unremitted 401(k) Deductions collected in the ordinary course of business, and (c) pay Vanguard for prepetition services.  As of the Petition Date, the Debtors estimate that they owe approximately $7,000 on account of the 401(k) Plan.

## F.     **Miscellaneous Benefits**

### 1.     **Paid Time Off**

37.     In the ordinary course of business, the Debtors provide paid time off to certain of their Employees (the "Paid Time Off").

38.     The Debtors offer an open Paid Time Off program for salaried Employees. Pursuant to the Debtors' policy, salaried Employees are afforded the flexibility to take planned vacations as needed.

39.     Eligible Employees who are regularly scheduled to work forty hours per week accrue 120 hours of Paid Time Off per year, increasing to 160 and then 200 hours of Paid Time Off per year once the Employee has been employed for 5 and 10 years, respectively. Although accrual is ongoing, the Debtors will advance such eligible Employees' Paid Time Off periodically throughout the year. The maximum Paid Time Off due to any Employee under the Paid Time Off program is approximately $3,000.

40.     By this Motion, the Debtors seek authority, but not direction, to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off and to continue the Paid Time Off policy in the ordinary course.  For the avoidance of doubt, the Debtors seek authority to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off in excess of $17,150 solely pursuant to the Final Order.

41.     In addition, the Debtors provide certain other forms of paid and unpaid leave, including, for example, (a) paid holidays, (b) leave under the Family and Medical Leave Act, and (c) other paid and unpaid leaves of absence for personal reasons, including those required by law. Importantly, these other forms of paid and unpaid leave do not involve incremental cash outlays beyond standard payroll obligations.

42.     The Debtors believe that the continuation of Paid Time Off is essential to maintaining Employee morale during these Chapter 11 Cases.  Further, the policies are broad-based programs upon which all Employees have come to depend.  The Debtors anticipate that their Employees will utilize any accrued paid leave in the ordinary course of business under their current

policies, which will not create any material cash flow requirements beyond the Debtors' regular payroll obligations.

### 2. Severance Progam

43.     In the ordinary course of business, the Debtors maintain an informal severance program for the benefit of their Employees (the "Severance Program"). Under the Severance Program, salaried Employees may be eligible for payment of severance if their employment is terminated due to a workforce adjustment or not-for-cause employer-initiated termination. Such severance payments (the "Severance Benefits") are calculated by reference to a terminated Employee's annual base salary, and according to which Employees are eligible to receive Severance Benefits in cash equal to 1–2 week(s) of the terminated Employee's base salary, depending on the Employee's role and/or term of service to the Company. The Severance Benefits are paid through payroll following the Employee's termination and in accordance with regular payroll practices.

44.     The Debtors' maintenance of the Severance Program and payment of Severance Benefits is critical to maintaining current Employee morale and loyalty. Failure to maintain the Severance Program would result in instability in the Debtors' workforce, which may undermine the Debtors' ability to retain and attract new Employees.

45.     As of the Petition Date, no former Employees are entitled to Severance Benefits, and nothing is owed on account of the Severance Program. However, out of an abundance of caution, the Debtors seek authority, but not direction to: (a) pay all outstanding prepetition amounts incurred on account of the Severance Program; and (b) continue the Severance Program in the ordinary course of business and in accordance with applicable state laws. For the avoidance of

doubt, the Debtors are not seeking authority to pay any Employee that is an Insider an amount in excess of the $17,150 priority cap under the Severance Program without further order of this Court

**BASIS FOR RELIEF**

## I.    SUFFICIENT CAUSE EXISTS TO AUTHORIZE THE DEBTORS TO HONOR THE EMPLOYEE COMPENSATION AND BENEFITS

### A.    Certain Employee Compensation and Benefits Are Entitled to Priority Treatment

46.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle priority treatment to certain of the Employee Compensation and Benefits owed to the Employees.  The Debtors are required to pay such priority claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

### B.    Payment of Certain Employee Compensation and Benefits Is Required by Law

47.    The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks.  Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon*

*Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

48.     Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all workers' compensation amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

### PAYMENT OF THE EMPLOYEE COMPENSATION AND BENEFITS IS PROPER PURSUANT TO SECTION 363(B) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY

49.     Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Employee Compensation and Benefits as such actions are in the ordinary course of the Debtors' business. Out of an abundance of caution, however, the Debtors seek entry of an order granting the relief requested herein to avoid any disruptions to their business operations.

50.     The relief requested herein may be granted by the Court pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides, in relevant

part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

51.    In addition, the Court may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of a bankruptcy court, empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of the Employee Compensation and Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity").

52.    The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.* 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating a court may authorize

payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment").

53.    The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process").

54.    Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these Chapter 11 Cases.  The majority of the Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses.  Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits.  Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these Chapter 11 Cases on the Debtors' ongoing business operations.

55.    Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that absent the payment of the Employee Compensation

and Benefits, the Debtors may experience turnover and instability at this critical time in these Chapter 11 Cases. Given the highly skilled and technical workforce, particularly in the Debtors' research and development functions, it will be incredibly difficult to find replacement workers, risking disruption to the business. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—efforts that might not be successful given the overhang of these Chapter 11 Cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their business in these Chapter 11 Cases.

56.     Indeed, courts in this district have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested here. *See, e.g.*, *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 23, 2025) (authorizing debtors to continue, modify, change, and discontinue the compensation and benefits in the ordinary course of business); *In re Am. Tire Distribs.*, Inc., No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (authorizing the debtors to continue, modify, change, and discontinue the compensation and benefits in the ordinary course of business and consistent with past practices); *In re Clover Techs. Grp., LLC*, No. 19-12690 (KBO) (Bankr. D. Del. Jan. 21, 2020) (authorizing Debtors to pay prepetition wages, salaries, other compensation, and reimbursable expenses and to

continue employee benefits programs on a final basis); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (authorizing debtors to satisfy prepetition wages, compensation, and benefit obligations to their employees and continue employee compensation and benefits programs in the ordinary course on an interim basis); *In re Destination Maternity Corp., et al.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis on a final basis); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re PES Holdings, LLC,* No. 19-11626 (KG) (Bankr. D. Del. July 22, 2019) (same).[5]    Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Employee Compensation and Benefits in the ordinary course of business and consistent with past practice.

### A LIMITED WAIVER OF THE AUTOMATIC STAY FOR WORKERS' COMPENSATION CLAIMS IS APPROPRIATE HERE

57.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

58.    The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit their Employees to proceed with their claims against the Workers' Compensation Program

---

5    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify the automatic stay because staying the Employee's workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees who are critical at this juncture.  Such departures could cause a severe disruption in the Debtors' business to the detriment of all stakeholders.  In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

59.    The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks, wire transfer requests, or automated clearing house transfers with respect to authorized payments related to this motion, as applicable.  Accordingly, the Debtors believe that checks, wire transfer requests, or automated clearing house transfers that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, wire transfer requests, or automated clearing house transfers in respect of the relief requested in this motion.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

60.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, including prepetition obligations related thereto, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these Chapter 11 Cases and the maintain value of their estate postpetition.  Failure to receive such authorization and other relief during the first twenty-one days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## RESERVATION OF RIGHTS

61.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## **WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)**

62.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **NOTICE**

63.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Debtors' secured lenders; (d) the United States Attorney's Office for the District of Delaware; (e) the state attorneys general for all states in which the Debtors conduct business; and (f) any party that requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

## NO PRIOR REQUEST

64.     No prior request for the relief sought in this motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the form**s** attached hereto as **Exhibit A and Exhibit B** respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:   February 11, 2026          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*

Richard M. Pachulski, Esq. (*pro hac vice* forthcoming)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:     (302) 652-4100
Facsimile:      (302) 652 4400
Email:            rpachulski@pszjlaw.com
                     mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (*pro hac vice* forthcoming)
Cia H. Mackle, Esq. (*pro hac vice* forthcoming)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:     (212) 561-7700
Facsimile:      (212) 561-7777
Email:            gdemo@pszjlaw.com
                     cmackle@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*