## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AVENGER FLIGHT GROUP, LLC, *et al.*,<br><br>                Debtors.[1] | Chapter 11<br><br>Case No. 26-10183 (  )<br><br>(Joint Administration Requested) |

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) AUTHORIZING MAINTENANCE OF CORPORATE CARD PROGRAMS; AND (E) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (the "Debtors") file this motion (the "Motion") for the entry of an interim order on an expedited basis, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), the entry of a final order, substantially in the form attached hereto as **Exhibit B** (the "Final Order"), pursuant to sections 105, 345, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the Debtors to (a) continue operating the Cash Management System (as

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

defined herein), (b) honor and pay the Bank Fees (as defined herein) in the normal course, (c) maintain existing business forms; and (d) authorizing maintenance of corporate card programs, and (ii) granting related relief, as described more fully herein. In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Lawrence Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>"), incorporated herein by reference.[2] In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2015-2 and 9013-1(m).

---

[2]      A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

**BACKGROUND**

4.     On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases, and no committees have been appointed or designated.

5.     Avenger Flight Group, LLC ("AFG LLC") and its affiliates (collectively, "Avenger" or the "Company") is a global leader in the commercial aviation simulation and training business. Avenger provides a full suite of advanced flight simulator training solutions to their customers, which include blue-chip passenger airlines, regional airlines, charter operators, and training operators. As of the Petition Date, the Company owns, operates or services 50 full-flight simulators and 15 flight training devices across 11 training centers in 4 countries.

6.     A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings is set forth in the First Day Declaration.

**CASH MANAGEMENT SYSTEM**

7.     In the ordinary course of business, the Debtors use a centralized cash management system (the "Cash Management System") to collect, manage, and disburse funds used in their business. The Cash Management System is essential to the stability of the Debtors' assets and business objectives, and it is essential to maximizing the value of the Debtors' estates.

8.     As of the Petition Date, the Debtors maintain eighteen bank accounts (collectively, the "Accounts"): (a) six accounts at City National Bank ("CNB"); (b) one account at CitiBank, N.A. ("Citi"); (c) one account at Santander Bank ("SB"); (d) six accounts at Bank of America, N.A. ("BoA"); (e) three accounts at mBank S.A. ("mBank"); and (f) a lockbox account (the

"Lockbox Account") at Banker's Trust ("BT," and together with CNB and Citi, the "Banks") in favor of Oxford Commercial Finance ("Oxford"). Receipts into and payments out of the Accounts occur in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers. A general diagram of the movement of funds within the Cash Management System is attached hereto as **Exhibit C**, and a summary of the Accounts and a short description of the purpose of each is attached hereto as **Exhibit D**.

9. All funds on deposit in the Debtors' Accounts are insured by the Federal Deposit Insurance Corporation to the fullest extent provided by law. CNB and BoA are on the Region 3 United States Trustee's (the "U.S. Trustee") list of approved depository institutions. Citi, SB, BT, and mBank are not on the list of approved depository institutions; however, Citi, SB, and BT are three of the largest and most stable financial institutions in the world. Further, and as discussed below, the Debtors are working with Oxford to transition their customers from the Lockbox Account at BT to a Debtor Account at CNB. Finally, the mBank Accounts are for the limited purpose of recovering a VAT refund from the Polish taxing authorities and will be closed as soon as possible after the refund has been received.

10. The Debtors do not invest any of their excess cash on hand.

## CNB, CITI, SB, AND mBANK ACCOUNTS

11. Debtor AFG LLC maintains an operations account at CNB and an operating account at Citi. These accounts collect all revenue generated by AFG LLC and its domestic subsidiaries' operations and are used to fund all domestic operations other than payroll expenses. Payroll expenses are funded from a payroll account held by AFG LLC at CNB. AFG LLC manually sweeps cash from its operations accounts to its CNB payroll account as needed.

12.     In anticipation of the Petition Date, AFG LLC also opened a bank account at CNB to hold all security deposits required by the *Debtors' Emergency Motion for the Entry of an Order (i) Approving the Proposed Adequate Assurance Deposit for Future Utility Services, (ii) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (iii) Approving the Proposed Adequate Assurance Procedures for Resolving Adequate Assurance Requests, and (iv) Granting Related Relief*, filed concurrently herewith.

13.     Debtor AFG EU Operations Corp. ("AFGEU") maintains an operations account at CNB. The Debtors transfer money into this Account as needed to fund the Debtors' operations in Poland. AFGEU and Debtor AFG Mexico Corp. also maintain payroll accounts at CNB, which are used to fund payroll expenses. AFG LLC manually sweeps cash into these Accounts as needed.

14.     AFGEU also maintains three accounts at mBank. mBank is a Polish bank, and the mBank Accounts were opened to facilitate the recovery of a VAT refund of approximately $100,000 associated with the sale of the Debtors' Polish operations. The Debtors anticipate closing the mBank Accounts shortly as soon as possible after the VAT refund has been received.

15.     Debtor Avenger Flight Group Mexico II SRL de CV ("Mexico II") maintains an Account at SB, which currently holds less than $1,500.00. The Debtors do not intend to deposit any amounts into the Mexico II Account during these Chapter 11 Cases; however, any proceeds from the Debtors' Mexican operations that the Debtors wish to move to the United States are required to move through the Mexico II Account.

16.     Through AFG LLC's Accounts, the Debtors also fund operations of certain non-Debtor subsidiaries located in Europe, India, and Latin America (the "Non-Debtor Foreign Affiliates").

**BOA ACCOUNTS**

17.     Debtors AFG LATAM SIM Holdings III LLC, AFG LATAM SIM Holdings II LLC, AFG LATAM SIM Holdings IV LLC, AFG Dallas III LLC, and AFG LLC each maintain one Account each at BoA. The BoA Accounts are all legacy accounts that have zero-dollar (or less than zero-dollar) balances and are no longer used by the Debtors in their operations. The BoA Accounts, however, were established by the Debtors' former Chief Financial Officer, and, while the Debtors have access to the BoA Accounts, BoA does not recognize any of the Debtors' current employees as having authority to close the BoA Accounts.[3] The Debtors intend to work with BoA after the Petition Date to close the BoA Accounts.

**OXFORD AND BT LOCKBOX ACCOUNT**

18.     As discussed at greater length in the First Day Declaration, AFG LLC and Oxford entered into a Security Agreement, dated as of January 28, 2025 (The "Oxford Security Agreement") pursuant to which Oxford issued to AFG LLC a revolving credit note in the principal amount of up to $5 million (the "Note"). The Note is secured by, among other things, AFG LLC's accounts receivable and the cash on deposit in the Lockbox Account. Pursuant to the Oxford Security Agreement, AFG LLC's "account debtors" are required to pay all amounts owed to AFG LLC into the Lockbox Account and Oxford is entitled to communicate with AFG LLC's account debtors to ensure that payments are made into the Lockbox Account.

19.     On December 29, 2025, Oxford called an event of default under the Oxford Security Agreement and terminated AFG LLC's ability to draw on the Note. The Debtors fully repaid all amounts due under the Note prior to the Petition Date and are working with Oxford to transition

---

[3]     BoA has continued to charge bank fees to the Accounts notwithstanding that they are no longer in active use and that the Debtors have tried to close them, which has resulted in certain of the BoA Accounts having negative balances.

their "account debtors" away from the Lockbox Account to an AFG LLC Account at CNB. The Debtors anticipate that this transition will be largely completed by the end of February. During the transition period, Oxford will sweep cash from the Lockbox Account into a Debtor Account at CNB every Friday at which point the cash will be available to fund the Debtors' operations.

## INTERCOMPANY TRANSACTIONS AND CLAIMS

20. In the ordinary course of business, the Debtors have historically engaged in intercompany transactions ("Intercompany Transactions") with each other and the Non-Debtor Foreign Affiliates, which in turn give rise to intercompany receivables and payables (each, an "Intercompany Claim"). The Debtors have generally accounted for and recorded all Intercompany Transactions and Intercompany Claims in their centralized accounting system and generally results in a net balance of zero when consolidating all intercompany accounts. All accounting entries, including Intercompany Transactions, are recorded in the Debtors' accounting system.

21. The Debtors seek authority to continue Intercompany Transactions with the Non-Debtor Foreign Affiliates in the ordinary course of business.

22. Through the relief requested by this Motion, the Debtors seek authority to continue effectuating Intercompany Transactions with the Non-Debtor Foreign Affiliates in accordance with the foregoing, the DIP Facility,[4] and the Approved Budget. The Debtors intend to continue undertaking Intercompany Transactions, subject to the Approved Budget and the terms and conditions of the DIP Facility, on account of obligations arising on a postpetition basis as between

---

[4] Certain capitalized terms used but not defined herein have the meanings given to them in the *Motion of the Debtors for Entry of Interim and Final Orders Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, which is being filed concurrently herewith (the "DIP Motion").

Debtors and Non-Debtors. The Debtors will maintain records of these transfers of cash and bookkeeping entries on a postpetition basis, and the Debtors can ascertain, trace, and account for the Intercompany Transactions on demand.

## CORPORATE CARD PROGRAMS

23.     As part of the Cash Management System, and in the ordinary course of business, the Debtors maintain company-paid credit cards (the "Corporate Cards") that are utilized to pay for certain work-related expenses, such as work-related travel, certain recurring IT purchases, and certain other operating expenses incurred on behalf of the Debtors (collectively, the "Corporate Card Programs"). The Corporate Cards are issued by American Express (in its capacities as the issuer of Corporate Cards, the "Corporate Card Provider"). As of the Petition Date, approximately 6 Corporate Cards have been issued by the Corporate Card Providers to the Debtors.

24.     The Debtors receive monthly statements for purchases (the "Corporate Card Expenses") made with the Corporate Cards. Once the Debtors determine that the Corporate Card Expenses comply with the Debtors' policies and procedures, the Corporate Card Expenses are paid.

25.     Over the last 12 months, the Debtors have incurred a monthly average of up to approximately $50,000 of Corporate Card Expenses. As of the Petition Date, the Debtors believe that approximately $30,000 in Corporate Card Expenses has accrued and is outstanding, none of which will become due and payable within the first twenty-one days after the Petition Date. On average, the Debtors pay the Corporate Card Provider approximately $300 per year in fees on account of the Corporate Card Programs (the "Corporate Card Fees"). As of the Petition Date, the Debtors estimate that there are no accrued but unpaid Corporate Card Fees.

26.     Use of the Corporate Cards is an integral part of the Debtors' Cash Management System, and continuation of the ability of the Debtors' employees to use the Corporate Cards is essential to the continued operation of the Debtors' businesses. The Debtors' inability to maintain the Corporate Card Programs could impose a hardship on the continued operation of the Debtors' businesses and would likely impose significant hardship on the Debtors' employees. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue the Corporate Card Programs in the ordinary course of business and to pay any prepetition or postpetition Corporate Card Expenses or fees with respect to the Corporate Card Programs.

**BANK FEES**

27.     The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System, including, without limitation, those fees as specified in the prepetition agreements entered into between the Debtors and the Bank (collectively, the "Bank Fees"). The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges. On average, the Debtors incur approximately $7,000 in Bank Fees per month. In the ordinary course of business and typically on a monthly basis, the Bank charges the Debtors and deducts from the appropriate bank accounts certain service charges and other fees, costs, and expenses. The Debtors believe there are no prepetition Bank Fees outstanding as of the Petition Date; however, the Debtors still seek approval to pay prepetition Bank Fees up to $7,000 in the event that such prepetition fees exist and seek approval to pay postpetition Bank Fees and authority for the Banks to deduct any such Bank Fees in the ordinary course and as and when due.

**BUSINESS FORMS**

28.     The Debtors use numerous preprinted business forms in the ordinary course of their business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with their Cash Management System. The Debtors would be required by the U.S. Trustee under its *Operating Guidelines for Chapter 11 Case* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtors' status as debtors-in-possession absent relief from the Court. To the extent necessary, the Debtors seek authority to use pre-existing business forms without such a reference in order to minimize expense to the Debtors' estates. The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession, and thus changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the corresponding case number.

**COMPLIANCE WITH SECTION 345 OF THE BANKRUPTCY CODE**

29.     Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's Office. As noted above, CNB has executed a Uniform Depository Agreement ("UDA") with, and is designated as authorized depositories by, the U.S. Trustee, pursuant to the U.S. Trustee Operating Guidelines.

30.     Cause exists to allow the Debtors to continue utilize the existing Accounts. The Cash Management System is complex and critical to the ongoing stability of the Debtors' businesses.  Relocating the Cash Management Systems to new accounts and/or an authorized

depository (a) would impose an excessive administrative burden on the Debtors and (b) could have unwanted or detrimental effects and disruption on the Debtors' business would stem from such a transition.  Although none of Citi, SB, or BT have signed a UDA, they are three of the largest and most stable financial institutions in the world. Further, and as discussed above, the Debtors are working with Oxford to transition their customers from the Lockbox Account at BT to a Debtor Account at CNB.  mBank has not—and, as a Polish bank without U.S. operations, presumably will not—sign a UDA; however, the Debtors are using the mBank Accounts solely to recover VAT and will close the mBank Accounts as soon as practicable. The Debtors will work in good faith with the U.S. Trustee to address any concerns regarding the use of these accounts on a postpetition basis.

31.     Out of an abundance of caution, to the extent the Court determines that the requirements of section 345(b) of the Bankruptcy Code are not satisfied, the Debtors request a 45 day suspension of such requirements, subject to the Debtors' rights to seek further extensions.

## **RELIEF REQUESTED**

32.     The Debtors seek entry of the Interim Order and Final Order, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**: (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, (c) maintain existing business forms, and (d) authorizing maintenance of corporate card programs; and (ii) granting related relief, as described more fully herein. In addition, the Debtors request that the Court schedule a final hearing within approximately thirty-five (35) calendar days of the commencement of the Chapter 11 Cases to consider approval of this Motion on a final basis.

**BASIS FOR RELIEF**

A.    **Maintaining the Existing Cash Management System is Essential to the Debtors'
      Operational Stability**

33.    The U.S. Trustee Guidelines require a debtor-in-possession to, among other things:

   a.    establish one debtor-in-possession bank account for all estate monies
         required for the payment of taxes, including payroll taxes;

   b.    close all existing bank accounts and open new debtor-in-possession
         accounts;

   c.    maintain a separate debtor-in-possession account for cash collateral; and

   d.    obtain checks that bear the designation "debtor-in-possession" and
         reference the bankruptcy case number and type of account on such checks.

34.    These requirements are designed to provide a clear line of demarcation between
prepetition and postpetition claims and payments and to help protect against the inadvertent
payment of prepetition claims by preventing banks from honoring checks drawn before the
Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during these
Chapter 11 Cases would severely disrupt the administration of the Debtors' estates. Accordingly,
the Debtors respectfully request authorization to operate the Accounts in the same manner as was
maintained in the ordinary course of business prior to the Petition Date.

35.    Continuation of the Cash Management System is permitted pursuant to
section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use
property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C.
§ 363(c)(1). Additionally, courts in this and other districts have recognized that an integrated cash
management system "allows efficient utilization of cash resources and recognizes the
impracticalities of maintaining separate cash accounts for the many different purposes that require
cash." *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd
in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing that requiring a

debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

36.     Here, continued use of the Cash Management System will facilitate the Chapter 11 Cases by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting the Cash Management System and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the maintenance of the existing Cash Management System because the Debtors employ appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date. As such, maintaining the Cash Management System is in the best interests of the Debtors' estates.

37.     Courts in this and other districts have regularly allowed debtors in large chapter 11 cases to maintain their existing cash management systems and such relief generally is non-controversial. *See, e.g.*, *In re In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Jan. 8, 2026) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition ); *In re American Tire Distributors, Inc.*, 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024); *In re SiO2 Medical Prods., Inc.*, 23-10366 (JTD) (Bankr. D. Del. Mar. 30, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same).[5]

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

38.     Moreover, as discussed above, in the ordinary course of business the Debtors conduct transactions through electronic wire transfers and other similar methods. If the Debtors' ability to conduct transactions by debit, wire, credit card, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs. Accordingly, the Debtors submit that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent that they require the Debtors to make all disbursements by check.

**B.     Authorizing (i) the Bank to Continue to Maintain, Service, and Administer the Accounts, and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

39.     The Debtors respectfully request that the Court authorize the Bank to continue to maintain, service, and administer the Accounts as an account of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business. In this regard, the Bank should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided, however*, that any check, advise, draft, or other notification that the Debtors advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

40.     The Debtors further request that the Court authorize the Bank to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or after the Petition Date. The Debtors also request that, to the extent that a Bank honors a prepetition check or other item drawn on any account either: (i) at the direction of the Debtors; (ii) in a good-faith belief that the Court has

authorized such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to verify independently or audit whether a particular item may be paid in accordance with a Court order or otherwise.

41.    The Debtors further request that the Court authorize them to pay the Bank Fees and authorize the Bank to: (i) continue to charge the Bank Fees; and (ii) effect chargebacks of returned items to the applicable Account, whether such items are dated before, on, or after the Petition Date, in the ordinary course of business. The Debtors' inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder the Debtors' ability to manage the Cash Management System to the detriment of the Debtors' estates.

42.    Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating chapter 11 cases with ongoing business operations and restructuring efforts. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Jan. 8, 2026) (authorizing the debtors' continued use of existing bank accounts); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. Dec. 30, 2025); *In re Am. Tire Distribs.*, Inc., No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re GigaMonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023) (same); *In re Medly Health Inc.*, No. 22-11257 (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); *In re TZEW Holdco, LLC*, No. 20-10910 (CSS) (Bankr. D. Del. April 14, 2020) (same); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 20, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same).

**C.**     **The Continued Performance of Intercompany Transactions Is Warranted**

43.     As stated above, the Debtors engaged in Intercompany Transactions before the Petition Date. In this regard, section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business . . . and [] use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Additionally, under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A).

44.     The Debtors believe that they do not require the Court's approval to continue entering into and performing under the Intercompany Transactions because such transactions are in the ordinary course of business within the meaning of section 363(c)(1) of the Bankruptcy Code. The Intercompany Transactions are not just a matter of routine in the Debtors' business; they are the types of transactions that are common among many business enterprises that operate through affiliates. Yet, precisely because of their routine nature, the Intercompany Transactions are integral to the Debtors' ability to operate their businesses and emerge successfully from chapter 11. Accordingly, out of an abundance of caution, the Debtors request express authority to engage in such transactions postpetition subject to and in compliance with (i) the requirements imposed on the Debtors under the terms of each DIP Order and the DIP Credit Agreement, including compliance with the DIP Budget and any other terms and conditions thereof, (ii) the entity level modeling provided by the Debtors to the DIP Agent in connection with the DIP Budget, and (iii) the execution, on an entity-by-entity basis, of a Post-Petition Global Note in accordance with the DIP Orders and the DIP Credit Agreement.

45.     Each Non-Debtor Foreign Affiliate provides good or services to the Debtors which are essential for the Debtors' operations.

46.     Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district and others. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Jan. 8, 2026) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status under section 503(b) of the bankruptcy code); *In re American Tire Distributors, Inc.*, 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (authorizing postpetition intercompany transactions and granting administrative expense status to intercompany claims); *In re Amyris, Inc.*, No. 23-11131 (TMH) (Bankr. D. Del. Sept. 19, 2023) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto under section 503(b) of the bankruptcy code); *In re GigaMonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto); *In re Medly Health Inc.*, No. 22-11257 (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022).

**D.     Granting Administrative Expense Priority to Postpetition Intercompany Claims is Necessary and Appropriate**

47.     The Debtors also request that the Court grant administrative expense status to all Intercompany Claims that arise postpetition as a result of an Intercompany Transaction, subject and junior in all respects to any superpriority claims, including any adequate protection claims as set forth in the DIP Orders. If Intercompany Claims are accorded such status, each entity using funds that flow through the Cash Management System will continue to bear the ultimate responsibility for its ordinary-course transactions with affiliates.

48.     The Debtors' funds are aggregated in the Cash Management System. The Debtors track all fund transfers in their accounting system and have the ability to identify and account for

all Intercompany Transactions, including all cash receipts and disbursements. Continuation of the Intercompany Transactions is in the best interests of the Debtors, their estates, and parties in interest. To ensure that each individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the Debtors request that, pursuant to sections 503(b)(1) and 507(a) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date be accorded administrative expense priority.

**E.     The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**

49.     To avoid disruption of the Cash Management System and to avoid unnecessary expenses, the Debtors request, pursuant to Local Rule 2015-2(a), authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors-in-possession. The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of the Debtors' status as debtors-in-possession, and thus changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the applicable case number.

50.     In other large chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "Debtor-In-Possession" label. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Jan. 8, 2026) (authorizing the debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re American Tire Distributors, Inc.*, 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (authorizing the debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re Amyris, Inc*., No. 23-11131 (TMH) (Bankr. D. Del. Sept. 19, 2023); *In re GigaMonster*

*Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023) (authorizing the debtors'
continued use of preprinted check stock without a "Debtor-in-Possession" marking); *In re Medly
Health Inc.*, No. 22-11257 (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*,
No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022).

## SATISFACTION OF BANKRUPTCY RULE 6003

51.     The Debtors believe that they are entitled to immediate authorization for the relief
contemplated by this Motion. Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief
is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the
filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or
otherwise incur an obligation regarding property of the estate, including a motion to pay all or part
of a claim that arose before the filing of the petition, but not a motion under Rule 4001." Fed. R.
Bankr. P. 6003. To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the
relief requested in the Motion, the Debtors submit that, for the reasons already set forth herein, the
relief requested in this Motion is necessary to avoid immediate and irreparable harm. For the
reasons discussed above, the relief requested herein is integral to the Debtors' administrative
activities in these Chapter 11 Cases and is necessary to preserve the value of the Debtors' business
and maximize the value of their estates for the benefit of all stakeholders. Failure to receive such
authorization and other relief during the first 21 days of these Chapter 11 Cases would severely
disrupt the administration of the Debtors' estates at this critical juncture. Accordingly, the Debtors
submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule
6003 to support granting the relief requested herein.

**RESERVATION OF RIGHTS**

52.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any prepetition claim against a Debtor entity; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay a prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**WAIVER OF BANKRUPTCY RULE 6004**

53.     The Debtors seek a waiver of any stay of the effectiveness of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the relief requested herein is essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**NOTICE**

54.     The Debtors will provide notice of this Motion to: (i) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: Jon Lipshie, Esq. (jon.lipshie@usdoj.gov); (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel to the DIP Lenders, (a) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: David M. Hillman

(dhillman@proskauer.com) and Matthew R. Koch (mkoch@proskauer.com)), and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn: Matthew B. McGuire (mcguire@lrclaw.com)); (iv) counsel to the DIP Agent, (a) Alston & Bird LLP, 90 Park Avenue, New York, New York 10016 (Attn: William Hao (william.hao@alston.com) and Dylan S. Cassidy (dylan.cassidy@alston.com); (v) the United States Attorney's Office for the District of Delaware; (vi) the state attorneys general for all states in which the Debtors conduct business; (vii) the Securities Exchange Commission; (viii) the Banks; and (ix) any party that requests service pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

## NO PRIOR REQUEST

55.     No prior request for the relief sought in this Motion has been made to this Court or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the proposed Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**: (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c) maintain existing business forms; and (ii) granting such further relief as may be appropriate and proper.

Dated:    February 11, 2026          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*

Richard M. Pachulski, Esq. (*pro hac vice* forthcoming)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652 4400
Email:          rpachulski@pszjlaw.com
                mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (*pro hac vice* forthcoming)
Cia H. Mackle, Esq. (*pro hac vice* forthcoming)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:      (212) 561-7700
Facsimile:      (212) 561-7777
Email:          gdemo@pszjlaw.com
                cmackle@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*